# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DIMA SUKARI,

    Plaintiff,

v.

AKEBONO BRAKE CORPORATION.,

    Defendant.

_____/

Case No. 18-10987

Honorable Nancy G. Edmunds

## ORDER AND OPINION GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [27] [45]

In this employment dispute, Plaintiff claims Defendant fired her because of her disability. Pending before the Court are Defendant's motion for summary judgment (ECF No. 27) and motion for sanctions (ECF No. 45). Plaintiff opposes the motions. On June 19, 2019, the Court held a hearing in connection with both motions. For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES AS MOOT** Defendant's motion for sanctions.

### I.    Background

In 2016, Plaintiff was hired by Defendant as a compensation analysist in Defendant's human resources department. Plaintiff's duties included analyzing salaries, reviewing and administering compensation plans, 401(k) plans, and health savings accounts, preparing reports and analyzing data, and according to Defendant, building and maintaining relationships across the company. Plaintiff held the same position throughout her employment with Defendant. On March 01, 2018, she was terminated from employment with Defendant.

1

Plaintiff suffers from osteoarthritis—a condition that attacks the bones, causes severe pain, and limits Plaintiff's daily activities. Plaintiff alleges that as a result of her condition, some mornings it takes her an hour or so to get moving due to pain and waiting for her medicine to take effect. She also states that during extreme flare-ups of her condition she has difficulty moving at all. Plaintiff contends her condition constitutes a disability[1], and she alleges she was terminated because of this disability. Plaintiff also claims Defendant terminated her employment because she applied for intermittent FMLA leave to address her disability and because she allegedly requested additional accommodations related to her disability.

According to Plaintiff, the path to her termination began in August 2017 when Eric Torigian became her supervisor. Plaintiff identifies two alleged requests for accommodations which she claims led to her termination. First, in August 2017, Plaintiff requested in writing for Defendant to provide her a standing desk to help with her back pain. Plaintiff submitted a doctor's note explaining that a standing desk would be beneficial to her health, Defendant approved her request, and Plaintiff received a standing desk. Plaintiff does not present any evidence reflecting that Defendant opposed or questioned Plaintiff's need for a standing desk. Notwithstanding, Plaintiff asserts her request for a standing desk was part of the reason for her termination because no other employee in Defendant's human resources department requested a standing desk.

Plaintiff also claims she requested as an accommodation for her disability that she be allowed to work from home during a flare-up of her osteoarthritis. Plaintiff states she made this request in September 2017 around the time of her request for a standing desk.

---

[1] Defendant does not contest whether Plaintiff's condition qualifies her as disabled.

Defendant denies that a request for this accommodation was ever made, and Torigian specially claims he was not aware of Plaintiff's condition.[2] Unlike Plaintiff's request for a standing desk, there is no written evidence in the summary judgment record indicating that Plaintiff requested to work from home as an accommodation for her disability.

In January 2018, Plaintiff applied for and received approval for intermittent FMLA leave in connection with her osteoarthritis. On January 10, 2018, Plaintiff sent an email to Erin Snygg, her immediate supervisor, requesting an "FMLA packet." In the e-mail, Plaintiff indicated she had an "ongoing medical issue" and would be "starting treatment soon, and if bumps come through, I would like to be ready for it." Snygg testified that she did not know of any medical condition Plaintiff had, and she did not ask Plaintiff to provide more information about the condition. Snygg forwarded Plaintiff's request to Amy Saldivar, Plaintiff's HR representative, for further handling. On January 15, 2018, Saldivar completed the Notice of Eligibility form and asked Plaintiff to complete the required certification forms. On January 25, 2018 Plaintiff's physician, Dr. Peters, completed the certification forms. Dr. Peters noted that Plaintiff suffered from "back pain due to lumbar radiculopathy." He indicated that during flare-ups, Plaintiff must be absent from work, she must lay down, and she is unable to perform any of her job functions.[3] The flare-ups could occur one to two times per week, for up to sixteen hours. Dr. Peters also indicated that he prescribed physical therapy treatment twice a week.

On January 30, 2018, Saldivar approved Plaintiff's application for intermittent FMLA leave. There is no evidence in the record of any issues with approving Plaintiff's FMLA

---

[2] Torigian acknowledged in his deposition that Plaintiff requested to work from home from time-to-time but stated that Plaintiff did not tell him her request was related to a medical condition or her disability.

[3] Notwithstanding Dr. Peter's evaluation, Plaintiff contends in this lawsuit that she was able to perform her work functions during flare ups.

3

leave application. There is also no evidence in the record suggesting that Torigian was involved in Plaintiff's FMLA application process or that he reviewed Plaintiff's FMLA paperwork. On February 5, 2018, Plaintiff was approved to use one day of FMLA leave because of a flare-up. There is no evidence in the record of any other request by Plaintiff to use her FMLA leave. Plaintiff suggests, however, that the temporal proximity between her March 01, 2018 termination and her first request to utilize her FMLA leave demonstrates that she was fired because of her request for FMLA leave.

Defendant presents a contrasting picture of Plaintiff's employment record and maintains that Plaintiff's termination resulted from her inability to be reliably present at work. According to Defendant, Plaintiff was counseled by her managers on her attendance problems multiple times, but her issues persisted.[4] The summary judgment evidence reflects that Plaintiff frequently arrived tardy, departed early, and called-off of work. In 2017, Plaintiff took seven more call-off days than she was permitted. Defendant asserts that in 2018, Plaintiff failed to abide by her core working hours, misrepresented vacation days to her manager, and padded her vacation with unauthorized time off. The summary judgment evidence does not reflect that Plaintiff's additional days-off or attendance issues were in any way related to her alleged disability.

Defendant contends Plaintiff was ultimately terminated because she misled Torigian about her vacation schedule and took unauthorized days off in connection with her vacation at the end of February 2018. Plaintiff was scheduled to work a full day on February 13, 2018. When she arrived at work, however, she told Torigian that she was only scheduled to work a half day, and that she was departing for vacation the following

---

[4] Defendant submits evidence indicating that Plaintiff's attendance issues preceded her employment with Defendant.

day, February 14. At approximately 8:00 a.m. on February 13, Plaintiff informed Torigian she needed to leave work to buy a suitcase and get ready for her vacation. Defendant's building access records confirm that Plaintiff left early and never returned to work that day.

On February 14, Plaintiff did not come to work. By chance, on February 14, Snygg (who was on maternity leave) visited the office with her newborn child. When Torigian told Snygg that Plaintiff was already on vacation, Snygg responded that Plaintiff's vacation was scheduled and approved to begin on February 15—not February 14. Torigian concluded that Plaintiff misrepresented the dates of her vacation and took unauthorized time off. Plaintiff disputes Snygg and Torigian's understanding of the dates of Plaintiff's scheduled vacation. However, there is no dispute that Snygg and Torigian believed at the time that Plaintiff had misrepresented the days of her vacation and took unauthorized time off.

On or about February 15, 2018, Plaintiff departed on her vacation. She was scheduled to return to work on Monday, February 26. However, on Sunday, February 25, Plaintiff notified Torigian that her return flight was overbooked and that she would not be flying out until the following day, returning to work on Tuesday, February 27. On the morning of February 27, Plaintiff sent a text message to Torigian informing him that she had just landed in Detroit but was too "exhausted and bloated" to go to work. She told Torigian that she would not be in the office until Wednesday. Torigian considered Plaintiff's conduct of padding both ends of her vacation with unauthorized time off as egregious conduct.

When Plaintiff failed to timely return from her vacation, Torigian asked Snygg to provide him with documentation related to Plaintiff's attendance and their prior discussions about her attendance. Snygg, who was home on maternity leave, e-mailed Torigian a

5

summary of Plaintiff's attendance issues. However, she was not able to provide Torigian with certain reports and documents related to Plaintiff's attendance. Torigian reviewed Snygg's e-mail summary and decided to terminate Plaintiff's employment.

According to Defendant, Plaintiff's position was not replaced with a new employee. Instead, after Plaintiff's termination, Plaintiff's position was modified and consolidated. One of Defendant's employees, Michael Pardon, who was already employed by Defendant as an HR generalist and benefits analyst, absorbed some of Plaintiff's compensation analyst responsibilities. Other responsibilities of Plaintiff's role were transitioned to the finance department.

After being terminated, Plaintiff initiated this lawsuit. In her complaint, Plaintiff asserts eight counts against Defendant for: FMLA Interference (Count I); FMLA Retaliation (Count II); disability discrimination under the Americans with Disabilities Act ("ADA") and Michigan Persons With Disabilities Civil Rights Act ("MPWDCRA") alleging Plaintiff was terminated because of her disability (Counts III and VI); disability discrimination under the ADA and MPWDCRA alleging Plaintiff was denied a promotion because of her disability (Counts IV and VII); and failure to accommodate under the ADA. The parties engaged in significant discovery in connection with Plaintiff's claims. Defendant now moves for summary judgment arguing that Plaintiff has no evidence to support her claims.

In addition to seeking summary judgment, Defendant also moves the Court to dismiss Plaintiff's claims as a discovery sanction under Federal Rule of Civil Procedure 37. Defendant's motion for sanctions concerns purported journal entries produced by Plaintiff in discovery and Plaintiff's deposition testimony about the entries. The entries

appear to be Plaintiff's contemporaneous description of events relating to her disability and communications about her disability with Defendant. For example, in the entry dated September 26, 2017, Plaintiff writes about a conversation she had with Torigian concerning her disability and her need to work from home during flare-ups. If authentic, the entries would be the only written evidence of Plaintiff's alleged request to Torigian for an accommodation to work from home. Defendant contends the journal entries are fake and were written after the filing of this lawsuit.[5] And Defendant accuses Plaintiff of committing perjury in connection with the entries.

In its motion for sanctions, Defendant argues that Plaintiff's conduct warrants dismissal of her claims. In response, Plaintiff argues that the journal entries are legitimate, the issue of their authenticity is a credibility determination to be made by the jury, and sanctions are not appropriate where Plaintiff does not directly rely on or cite to the entries as evidence in response to Defendant's motion for summary judgement.

II.     **Summary Judgment Standard**

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue

---

[5] Defendant submits the opinion of a purported handwriting expert to support its position that the journal entries are fake.

for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In addition, once the moving party has met its burden, the non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017). The non-moving party must present some evidence in support of its complaint to defeat a motion for summary judgment and show that a genuine issue for trial exists—i.e., that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248.

### III. Analysis

#### A. Disability Discrimination Claim

The ADA prohibits employers from discriminating "against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). To prove a prima facie case of disability discrimination under the ADA or MPWDCRA, Plaintiff must show: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) Defendant knew or had reason to know of her disability; and (5) her position remained open while Defendant sought other applicants or she was replaced. *Keogh v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 324 (6th Cir. 2018) (citing *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)). *See also, Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 n.3 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (claims under the PWDCRA "essentially track those under [the

8

ADA]."). Plaintiff bears the burden of proving her disability was the "but for" cause of the adverse employment action. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014). To prove retaliation, Plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection. *Bryson v Regis Corp*, 498 F.3d 561, 577 (6th Cir. 2007).

Defendant argues Plaintiff's disability discrimination claims fail for several reasons. First, Defendant contends Plaintiff cannot establish she was a "qualified individual" under the ADA because she could not meet the attendance requirements of her job. Second, Defendant argues Plaintiff cannot prove the person who decided to terminate her—Eric Torigian—had knowledge of her disability before the termination. Third, Defendant claims Plaintiff cannot show her disability was the "but for" cause of her termination or that Defendant's non-discriminatory reason for her termination was pretextual. Finally, Defendant maintains Plaintiff's discrimination claims fail because she failed to establish that her position remained open or that Defendant sought applicants to replace her after her termination.

Defendant's third and fourth points are dispositive of Plaintiff's claims. There is no evidence in the record indicating that Plaintiff's termination was based on her disability or her request for FMLA leave. The summary judgment evidence reflects Plaintiff was either tardy or absent on several days in 2017 and 2018. The summary judgment evidence also reflects that none of these absences arose from or had anything to do with her disability. Plaintiff was counseled on the need to adhere to Defendant's attendance policies in April 2017, November 2017, and again in January 2018. According to Defendant, Plaintiff's tardiness, early departures, and use of absent salary days in violation of

9

company policy led to Defendant requiring Plaintiff to select core hours in which she would reliably be present at work. Plaintiff's attendance issues continued, however, culminating in her supervisor—Torigian—believing that Plaintiff misrepresented her vacation days and bookended her vacation abroad with unauthorized time off. Based on his view that Plaintiff had demonstrated an inability to present herself for work or communicate honestly about her whereabouts, Torigian made the decision to terminate Plaintiff. His testimony is supported by the email request to Snygg for documentation concerning Plaintiff's attendance issues and Defendant's attempt to correct them.

Plaintiff presents no credible direct or circumstantial evidence that her alleged disability was the "but for" cause of her termination. Plaintiff points to the temporal proximity between the date she applied for FMLA leave and the date she was fired as evidence supporting her disability claim. However, temporal proximity alone is not enough to survive summary judgment. *See Parks v. UPS Supply Chain Sols., Inc.*, 607 F. App'x 508, 517 (6th Cir. 2015) ("For purposes of establishing pretext, 'the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.'") (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012)). Plaintiff also submits evidence of another employee who was terminated who also happened to be disabled. But this evidence does not establish a genuine issue of material fact as to whether Torigian terminated Plaintiff because of her disability.

To be clear, the Court disagrees with Defendant about whether there is any evidence Torigian knew about Plaintiff's disability at the time he made the decision to terminate her. Plaintiff has at least raised a genuine issue of material fact with respect to that issue. Notwithstanding, the Court finds no evidence in the record that Torigian's

decision to terminate Plaintiff was in any way related to her disability. Instead, the overwhelming evidence reflects that Torigian's decision to terminate Plaintiff was based on her repeated absence from work for reasons unrelated to her disability and his belief that she was dishonest with him about her vacation in February 2018.

In addition, Plaintiff fails to establish that her position remained open or that Defendant sought applicants to replace her after her termination. As soon as Plaintiff was terminated, her job responsibilities and duties were absorbed by other employees or departments. Michael Pardon, a Human Resources Information ("HRIS") analyst who was employed by Defendant at the time of Plaintiff's termination, took on some of Plaintiff's analyst responsibilities. Pardon's job title is now compensation and benefits analyst. Other responsibilities were transitioned to the payroll function in the finance department. And Plaintiff's position was eliminated. Accordingly, Plaintiff's claim fails because she cannot establish the fifth element of her prima facie case. *See Webb v. ServiceMaster BSC LLC*, 438 Fed. Appx. 451, 454 (6th Cir. 2011) (affirming summary judgment where following plaintiff's termination, his group was restructured, no replica of his job existed, and his responsibilities were distributed among existing employees).

### B. Failure to Accommodate Claim

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(a), (b)(4)(A). To establish a prima facie case for failure to accommodate, Plaintiff must show that: (1) she is disabled within the meaning of the ADA, (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) Defendant knew or had reason to know about her disability; (4) she requested an

accommodation; and (5) Defendant failed to provide the necessary accommodation. *See Myers v. Cuyahoga Cty., Ohio*, 182 F. App'x 510, 516 (6th Cir. 2006). Generally, a disabled employee's request for an accommodation triggers an employer's duty to participate in good faith in the interactive process to attempt to identify an appropriate accommodation. *See Clark v. Whirlpool Corp.*, 109 Fed App' x. 750, 755 (6th Cir. 2004). However, under this analysis, an employee may not rely on an accommodation that was not requested. *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 518 (6th Cir. 2002). *See also Beckman v. Wal-Mart Stores, Inc.*, No. 1:15-CV-1284-GJQ, 2017 WL 4409097, at *4 (W.D. Mich. Oct. 4, 2017), *aff'd*, 739 F. App'x 800 (6th Cir. 2018) (granting summary judgment where the plaintiff failed to introduce evidence that he requested the specific accommodation).

To be "otherwise qualified" for the job, the employee bears the burden of showing she can perform the "essential functions" of the job, with or without accommodation. 42 U.S.C. § 12111(8); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 456 (6th Cir. 2004). "If the employer claims that the disabled individual would be unqualified to perform the essential functions of the job even with the proposed accommodation, the disabled individual must prove that he or she would in fact be qualified for the job if the employer were to adopt the proposed accommodation." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184 (6th Cir. 1996).

The employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations. *See Tubbs v. Formica Corp.*, 107 Fed. App'x 485, 488-89 (6th Cir. 2004). Once a plaintiff establishes a prima facie case, the burden shifts to the

employer to demonstrate that any particular accommodation would impose an undue hardship on the employer. *See Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011).

Here, Plaintiff's failure to accommodate claims fail because there is no evidence Plaintiff ever requested an accommodation to work from home. Plaintiff provided two medical notes to Defendant related to her alleged disability: one requesting a stand-up desk and one certifying her need for intermittent FMLA leave. The notes did not address Plaintiff's work schedule, nor did they state that Plaintiff needed to work from home as an accommodation for her medical condition. There is nothing in the documentary evidence to support Plaintiff's contention that she requested an accommodation due to her disability. In fact, the summary judgment evidence supports the opposite conclusion. Plaintiff does not mention her disability as a reason for her need to miss work in any of the written communications about her many absences. Moreover, the evidence establishes that Defendant approved without objection Plaintiff's formal requests for accommodations related to her disability.

In addition, even if there was evidence that Plaintiff requested the right to work from home as an accommodation for her disability, the evidence reflects that she would not have been able to perform the essential functions of her job with the accommodation. Plaintiff admitted that when she experienced a flare-up of her medical condition, which would allegedly cause her to need to work from home, she was unable to perform any of the essential functions of her job. Indeed, in her application requesting intermittent FMLA leave, Plaintiff stated that she was unable to work from home during a flare-up. Plaintiff does not present evidence explaining how she would have been able to perform her

duties from home while a flare-up of her disability was occurring. Accordingly, Defendant is entitled to summary judgment on Plaintiff's failure to accommodate claims.

### C. Failure to Promote Claim

Plaintiff claims she was denied a promotion to the position of supervisor of compensation and benefits because of her disability. The promotion went instead to Erin Snygg, Plaintiff's co-worker, who was pregnant at the time of her promotion. Plaintiff admits she did not apply for the position and did not express interest in the position to Torigian. And Torigian testified that he selected Snygg because she had the skills and qualifications for the supervisor position, she had over ten years of HR experience, and she held a master's degree in human resources. Torigian also testified that he did not consider Plaintiff for the position because, in his view, she did not possess the requisite skills or experience for the position. Torigian noted that Plaintiff only started working in human resources in 2014 and therefore had less experience than Snygg. Plaintiff concedes she has no specific facts or direct evidence reflecting that she was not selected for the supervisor position because of her disability. She cannot prove that "but for" her disability, she would have been promoted. *See Wright v. Memphis Light, Gas & Water Div.*, 558 Fed. Appx. 548, 555 (6th Cir. 2014) (affirming summary judgment where plaintiff could not show "but for" his disability he would have been promoted); *Barkeley v. Steelcase, Inc.*, No. 1:07-CV-1008, 2009 WL 722601, at *11 (W.D. Mich. Mar. 17, 2009) (granting summary judgment where plaintiff presented no evidence that the employer's reasons for promoting one candidate over the other was pretext for disability discrimination).

### D. FMLA Retaliation Claim

The FMLA "affords employees protection in the event they suffer retaliation or discrimination for exercising their rights under the FMLA. Specifically, '[a]n employer is prohibited from discriminating against employees ... who have used FMLA leave.'" *Millen v. Oxford Bank*, 745 F. App'x 609, 617 (6th Cir. 2018) (quoting *Arban v. W. Pub. Corp.*, 345 F.3d 390, 403 (6th Cir. 2003)). "This prohibition includes retaliatory discharge for taking leave." *Id.*

To establish a prima facie case of FMLA retaliation, Plaintiff must establish: (1) she engaged in an activity protected under the FMLA; (2) the exercise of her protected rights was known Defendant; (3) she suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Arban*, 45 F.3d at 404; *Parks*, 607 F. App'x at 513.

Defendant argues Plaintiff's FMLA retaliation claim fails because there is no evidence demonstrating that Torigian knew of Plaintiff's FMLA status at the time he made the decision to terminate her. Defendant further argues that Plaintiff cannot establish she was terminated because she exercised her FMLA leave. This second point is dispositive of Plaintiff's claim.

While there is some evidence that Torigian was aware of Plaintiff's FMLA status, or that she had at least applied for some type of FMLA accommodation, when he made the decision to terminate her, there is no evidence that Plaintiff was terminated because she exercised her FMLA leave. Plaintiff was not fired after she requested intermittent FMLA leave. Nor was she fired immediately after she took her first day of FMLA leave on February 5, 2018. There is no evidence that Torigian considered terminating Plaintiff at

that time. Rather, Plaintiff was fired when Torigian believed that she took an extra four days off along with her previously scheduled almost two-week vacation and misrepresented her authorization to take the extra days. These extra days were not related to her disability or her request for FMLA leave.

Plaintiff's contention that she was scared to utilize FMLA leave does not comport with the reality her termination. First, in April 2017, Plaintiff was approved for and received without issue four weeks of paid medical leave from Defendant. Plaintiff does not present any evidence indicating that Defendant's posture toward medical-related leave had changed over the course of the year. Second, Defendant's request for Plaintiff to try to schedule her doctor's appointments for the beginning or end of the work day, as opposed to the middle of the day, so to minimize the amount of work she missed, cannot be reasonably interpreted as a threat to not utilize FMLA leave. Finally, Plaintiff had no opportunity to further utilize her FMLA leave because she either took personal days for non-disability reasons or was on vacation for the remaining month of February. There is no evidence that Plaintiff's termination was related to her FMLA leave. Accordingly, Defendant is entitled to summary judgment on this claim.

### E. FMLA Interference Claim

To establish a prima facie case of FMLA interference, Plaintiff must show: (1) she was an eligible employee; (2) Defendant was an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Defendant notice of her intention to take leave; and (5) Defendant denied her FMLA benefits to which she was entitled. *Donald*, 667 F.3d at 761. "A benefit is denied if an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave." *Tennial v. UPS, Inc.*, 840

F.3d 292, 308 (6th Cir. 2016). Unlike with the retaliation theory, the employer's motive is not relevant to a claim of interference. *Parks*, 607 F. App'x at 518.

Here, Plaintiff does not establish that Defendant interfered with her FMLA rights. To the contrary, the summary judgment evidence reflects that on January 30, 2018 Defendant approved without question Plaintiff's request for intermittent FMLA leave and on February 5, 2018 Plaintiff was permitted to take FMLA leave. Based on the evidence in the record, this was the only day Plaintiff designated for FMLA leave. Plaintiff does not present any facts indicating that she was ever denied any FMLA benefits. Accordingly, Defendant is entitled to summary judgment on this claim.

### F. MPWDCRA Failure to Accommodate Claim

Defendant argues it is entitled to summary judgment on Plaintiff's state law failure to accommodate claim because Plaintiff did not request her accommodation in writing. Under the MPWDCRA, a person with a disability cannot establish a failure to accommodate unless she notified her employer, in writing, of the need for an accommodation within 182 days of learning the accommodation was needed. MCL 37.1210(18). Plaintiff does respond to this issue in her response. Notwithstanding, Plaintiff concedes that she never requested in writing to work from home as an accommodation for her disability. Defendant is entitled to summary judgment on this claim.

### G. Plaintiff Cannot Establish Pretext

When a plaintiff establishes a prima facie case of discrimination, and the employer offers a legitimate, non-discriminatory explanation for its actions, Plaintiff must show pretext, *i.e.* that the employer's explanation was fabricated to conceal an illegal motive.

*Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). In the Sixth Circuit, "a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Wright*, 558 F. App'x at 554 (quoting *Chen*, 580 F.3d at 400).

Here, even if Plaintiff established a prima facie case of disability discrimination or FMLA retaliation, she failed to produce evidence to show that Defendant's legitimate, non-discriminatory/non-retaliatory reason for her termination was pretextual. Plaintiff's absences are not in dispute – they are documented by her own text messages and Defendant's internal records. Plaintiff does not dispute that Defendant attempted to counsel her regarding its policy and her attendance in April and November 2017 and January 2018. Plaintiff admits that Defendant required regular and punctual attendance and agrees that it was reasonable for Defendant to require employees to present themselves at work each day, on time, as scheduled.

The summary judgment evidence reflects that Torigian believed Plaintiff mislead him, padded her vacation with extra days, and made no effort to show up to work on February 27. He then requested to review documentation regarding her attendance. After confirming Plaintiff's attendance issues, and that Defendant had made efforts to correct her attendance, Torigian terminated Plaintiff for her failure to improve her attendance.

Other than her personal belief, Plaintiff presents no evidence suggesting that Defendant's reason for her termination is false. Similarly, Plaintiff has failed to establish that Defendant's reasons for promoting Snygg were pretextual. Plaintiff does not identify

18

any evidence in the record indicating that Snygg's promotion had anything to do with Plaintiff's alleged disability. Plaintiff's "own subjective belief . . . is insufficient to show pretext and overcome a motion for summary judgment." *Neff v. City of E. Lansing*, 724 Fed. Appx. 448, 452 (6th Cir. 2018).

### H. Motion for Sanctions

The Court has granted Defendant's motion for summary judgment and disposed of all of Plaintiff's claims in this dispute. Accordingly, Defendant's motion for sanctions is dismissed as moot.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**. Defendant's motion for sanctions is **DISMISSED AS MOOT**.

SO ORDERED.

s/Nancy G. Edmunds<br>
Nancy G. Edmunds<br>
United States District Judge

Dated: July 31, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 31, 2019, by electronic and/or ordinary mail.

s/Lisa Bartlett<br>
Case Manager