## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: May 29, 2020

Mr. Robert Nathan Dare
Clark Hill
500 Woodward Avenue
Suite 3500
Detroit, MI 48226

Mr. Jack Warren Schulz
Schulz Gotham
P.O. Box 44855
Detroit, MI 48244

Ms. Anne-Marie V. Welch
Clark Hill
151 S. Old Woodward Avenue
Suite 200
Birmingham, MI 48009

Re: Case No. 19-1952, *Dima Sukari v. Akebono Brake Corporation*
Originating Case No. : 2:18-cv-10987

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Mr. David J. Weaver

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0309n.06

No. 19-1952

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DIMA SUKARI, | ) | **FILED** |
| | ) | May 29, 2020 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| AKEBONO BRAKE CORPORATION, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: MOORE, McKEAGUE, and READLER, Circuit Judges.**

**CHAD A. READLER, Circuit Judge.** Dima Sukari contends she was terminated from her position at Akebono Brake Corporation due to her osteoarthritis, a bone disorder that qualifies her as disabled under the Americans with Disabilities Act. But the record reveals legitimate motivations for her termination, including Sukari's poor attendance record. That and other considerations led the district court to grant summary judgment to Akebono. Following review, we **AFFIRM** the judgment below.

**I. BACKGROUND**

Dima Sukari was hired by Akebono Brake Corporation to work as a compensation analyst in the company's human resources department. Initially, Sukari's primary duties were to prepare reports and analyze compensation data. Later in her tenure, she was also given customer service duties, which included meeting with Akebono managers and employees to discuss compensation

Case No. 19-1952, *Sukari v. Akebono Brake Corporation*

related matters, such as 401(k) plans.  Sukari worked at Akebono for about two years before the company terminated her employment.

Sukari suffers from osteoarthritis—a joint and bone disorder that affects her movement ability and daily activities.  During particularly bad episodes, Sukari can barely move.  Due to her condition, Sukari requested and received accommodations from Akebono.  They included use of a standing desk at work as well as Family and Medical Leave Act arrangements, which allowed her to request intermittent FMLA leave.  Sukari alleges that she also requested to work from home during difficult flare-ups, a request she says Eric Torigian, the Vice President of HR, denied, despite the fact that her previous supervisors had allowed her to do so (a contention those supervisors deny).

Sukari's tenure at Akebono was marked by severe attendance issues.  Those issues trace back to the very start of her time at Akebono—she showed up two days late for her first day.  Sukari says her absence was the result of a car accident on her way into work.  Six months later, in Sukari's performance review, her supervisor noted that Sukari only "partially meets expectations" when it comes to work attendance.

Sometime later, Torigian and another employee, Erin Snygg, attempted to meet with Sukari to discuss Snygg's promotion, which made her Sukari's supervisor.  Torigian and Snygg wanted to discuss Sukari's attendance issues and to set forward-looking attendance expectations.  The first attempt to meet was rescheduled because Sukari unexpectedly missed the meeting.  When the meeting finally occurred, Snygg explained to Sukari that she needed to have a consistent schedule during which she could be relied on to be in the office.  Sukari's job was a customer-service-based position, and Torigian had placed an emphasis on HR employees being present in the office to enhance HR offerings to employees.  Snygg also explained that Sukari's twelve absences that year

2

Case No. 19-1952, *Sukari v. Akebono Brake Corporation*

already exceeded the five "absent-salary days" allowed annually. The meeting ended with an action item for Sukari: improve attendance. Yet the day after Sukari set her core hours, she left the office two hours before the end of her established schedule. And over the next month, Sukari requested an "absent day" to attend to a court matter, even though absent days are designed for unplanned absences.

Sukari's attendance issues manifested again a few weeks later. At the time, Snygg was on maternity leave and Torigian was acting as Sukari's supervisor. Sukari had scheduled vacation leave from February 15 through February 23. Torigian knew that Sukari would be taking a half-day prior to her scheduled vacation. But on February 13, two days before Sukari's leave, she told Torigian she needed to leave early to buy luggage for her trip. Sukari's departure led Torigian to believe that the 13th was Sukari's scheduled half-day, with her vacation beginning on the 14th. Even then, Sukari did not work a half-day; she left work at 8:00 a.m. to buy luggage for her trip, and the building records show she did not return on the 13th or 14th.

Sukari was scheduled to return to work on February 26. But she informed Torigian that her flight home was overbooked, meaning she would not be returning to work until the 27th. Sukari, however, acknowledges that she did not pursue a flight on a different airline, and that she received a free flight voucher for being rescheduled. And yet when she landed the on the 27th, she texted Torigian that she was too "exhausted and bloated" to work. It was not until the 28th that Sukari returned to the office.

Torigian had seen enough. At his request, Snygg emailed him written summaries of both Sukari's attendance issues as well as recent attendance-related meetings they had with Sukari. After reviewing that information, Torigian decided to terminate Sukari's employment. Torigian informed Sukari of his decision on March 1st.

Case No. 19-1952, *Sukari v. Akebono Brake Corporation*

That termination prompted this action. In her complaint, Sukari alleged that her termination was based upon her osteoarthritis, in violation of the Americans with Disabilities Act and the Michigan Persons with Disabilities Civil Rights Act. She alleges that Akebono also violated those statutes by failing to accommodate her disability, and that Akebono separately violated the FMLA. The district court granted summary judgment to Akebono on all claims. On appeal, Sukari challenges the district court's findings that (1) Akebono did not violate the ADA when it terminated Sukari, (2) Akebono did not fail to accommodate Sukari in violation of the ADA, and (3) Akebono did not retaliate against Sukari for exercising her rights under the FMLA.

## II. ANALYSIS

A grant of summary judgment, which we review de novo, is "proper when the moving party shows that there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Demyanovich v. Canon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute exists when there is sufficient evidence on which the jury could reasonably find for the nonmoving party." *Id.*

*Sukari's Termination Did Not Violate The ADA.* The ADA prohibits an employer from discriminating against a qualified employee based upon the employee's disability. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702–03 (6th Cir. 2008). To establish a prima facie disability discrimination claim based upon unlawful termination, Sukari must show: "1) [] she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) [Akebono] knew or had reason to know of [Sukari's] disability; and 5) [Sukari's] position remained open while [Akebono] sought other applicants or [Sukari] was replaced." *Id.* For Sukari's disability to be actionable, it must have been the "but for" cause of

4

Case No. 19-1952, *Sukari v. Akebono Brake Corporation*

her termination. *Demyanovich*, 747 F.3d at 433; *Arthur v. Am. Showa, Inc.*, 625 F. App'x 704, 707 (6th Cir. 2015).

One way for a plaintiff to establish an ADA-based discrimination claim is through the *McDonnell Douglas* burden-shifting framework. Under that framework, Sukari must first establish a prima facie case of disability discrimination. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). If she does, the burden shifts to Akebono to put forth a non-discriminatory reason for terminating Sukari. *Id.* And if Akebono meets its burden as well, the ball bounces back into Sukari's court, who must then show that Akebono's stated motives for her termination were pretextual. *Id.* The district court found that Sukari's claim failed at three independent junctures: (1) she was neither replaced by a new employee nor did Akebono seek a replacement, (2) Akebono's reasons for terminating her were not pretextual, and (3) her disability was not the "but for" cause of her termination. We can resolve Sukari's claim on the first ground alone.

For purposes of articulating a prima facie claim under the ADA, an "employee is replaced only where 'another employee is hired or reassigned to perform [her] duties.'" *Webb v. ServiceMaster BSC LLC*, 438 F. App'x 451, 454 (6th Cir. 2011) (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)). Acknowledging that no new employee was hired to replace her, Sukari instead contends that a co-worker was assigned to take her position. Where a plaintiff's roles and responsibilities are re-assigned or redistributed among current employees—as opposed to reassigned completely to one other employee—the position is not considered "replaced." *Id.* (finding, in the context of an age discrimination claim, that "spreading the former duties of a terminated employee among the remaining employees does not constitute replacement" (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992))). This describes Sukari's circumstances. Her duties were assumed by her former co-workers, one of whom also received an

Case No. 19-1952, *Sukari v. Akebono Brake Corporation*

updated job title—from "HRIS Analyst III" to "Compensation & Benefits Analyst"—an indication the employee did not fully replace Sukari, but instead subsumed some of her duties into his role. The rest were distributed among Snygg and members of the Finance Department, or lost to automation. We thus agree with the district court that Sukari's duties are more properly classified as "redistributed," rather than characterizing her position as being "replaced."

Sukari also claims that Akebono's stated reasons for terminating her are pretext, with the actual reason being her disability. We need not examine pretext here because it is clear that Sukari fails to establish a prima facie case of discrimination. *See Whitfield*, 639 F.3d at 259 (noting that the plaintiff only has the burden to prove an employer's motives were pretextual after the plaintiff has made out a prima facie case and after the employer has offered a non-discriminatory rationale for their action). And for the reasons just explained, Sukari fails to satisfy that condition precedent—she does not make out a prima facie case, which dooms her ADA claim.

*Akebono Did Not Fail To Accommodate Sukari.* Sukari next disputes the district court's rejection of her ADA-based failure to accommodate claim. To make out a prima facie case of a failure to accommodate claim, Sukari must show: "(1) she [is] disabled . . . ; (2) she [is] otherwise qualified for her position, with or without reasonable accommodation; (3) [Akebono] knew or had reason to know about her disability; (4) she requested an accommodation; and (5) [Akebono] failed to provide the necessary accommodation." *Brumley v. UPS*, 909 F.3d 834, 839 (6th Cir. 2018).

The district court rejected Sukari's claim on two grounds. One, that Sukari failed to request an accommodation. *Sukari v. Akebono Brake Corp.*, Case No. 18-10987, 2019 WL 3456842, at *6 (E.D. Mich. July 31, 2019). And two, even if Sukari had requested a work-from-home accommodation, she could not show she was "otherwise qualified" for the position. *Id.* In her appellate briefing, Sukari does not challenge the district court's finding that she was not "otherwise

6

Case No. 19-1952, *Sukari v. Akebono Brake Corporation*

qualified."  Having failed to challenge that conclusion in this Court, Sukari's failure to

accommodate claim fails.  *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir.

2018).

      *Sukari Was Not Terminated For Exercising Her Rights Under The FMLA.*  Lastly, Sukari

argues her employment was terminated because she obtained and used FMLA coverage.  To

establish a prima facie case for an FMLA retaliation claim, Sukari must show: "(1) [she] was

engaged in an activity protected by the FMLA; (2) [Akebono] knew that she was exercising her

rights under the FMLA; (3) after learning of [Sukari]'s exercise of FMLA rights [Akebono] took

an employment action adverse to her; and (4) there was a causal connection between the protected

FMLA activity and the adverse employment action."  *Donald v. Sybra, Inc.*, 667 F.3d 757, 761

(6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc*. 454 F.3d 549, 556 (6th Cir. 2006)).

If she does so, the burden shifts to Akebono to provide a legitimate, non-retaliatory reason for her

termination, before the burden shifts back to Sukari to demonstrate pretext.  *See id.* at 761–62.

      There seems to be little dispute between the parties that Sukari has established the first two

elements of a prima facie claim.  On January 15, she requested information on FMLA.  On January

30, she was approved for intermittent FMLA leave.  And on March 1, she was fired.

      Sukari contends she has also met the third—a causal connection between her request for

FMLA coverage and her termination—due to the temporal proximity between those two events.

Here, a causal connection analysis raises complicated issues related to the temporal proximity

between Sukari's request for and use of FMLA leave and her termination, as well as the role of

intervening events between her protected activity and her termination.  *See Kuhn v. Washtenaw

County*, 709 F.3d 612, 628 (6th Cir. 2013) (finding, in the Title VII context, that the plaintiff did

not show the casual connection required for a prima facie case partly because "'an intervening

Case No. 19-1952, *Sukari v. Akebono Brake Corporation*

legitimate reason' to take an adverse employment action 'dispels an inference of retaliation based on temporal proximity'" (quoting *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012)); *Wasek*, 682 F.3d at 471–72 (finding that the plaintiff could not meet the causation prong of his prima facie Title VII sexual harassment retaliation case because "[a]ll of the available evidence, including [plaintiff]'s own deposition, indicates that the ban was a result of [plaintiff] leaving his work site" and "[plaintiff]'s decision to leave the worksite was an intervening event"); *cf. Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (explaining that temporal proximity alone is sufficient to establish a prima facie case of retaliation when an employer "immediately retaliates against an employee upon learning of his protected activity" meaning "little other than protected activity could motivate the retaliation"). Here, Sukari's recurring attendance issues culminated in her unauthorized extension of her scheduled vacation, two days on the front end, and two days on the back, all of which occurred after her request for FMLA coverage.

Nonetheless, we need not resolve Sukari's claim definitively on prima facie case grounds. For it is quite apparent that, even if she has met that burden, she falls far short of demonstrating that Akebono's reason for her termination—her attendance issues—was pretext for taking FMLA leave. Sukari notes that she had not utilized all of her authorized vacation time when she was terminated, but the issue is whether she took unauthorized (not authorized) leave. She argues that other employees, most notably Snygg, were not counseled for similar attendance issues, but she fails to account for Snygg's position as her supervisor or to demonstrate that Snygg's behavior was similar. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Sukari suggests that Torigian did not rely on appropriate documentation in deciding to terminate her, but any dispute over the veracity of the documentation on which Torigian relied does not

8

Case No. 19-1952, *Sukari v. Akebono Brake Corporation*

create a fact dispute.  And Sukari takes issue with the fact that she was not required to sign a letter of intent prior to her termination, as she says the employee handbook required.  But a reasonable jury could not conclude that Akebono's proffered reason was pretextual solely because Sukari did not sign a letter of intent prior to her termination, given the efforts Torigian and Snygg made to address Sukari's attendance issues throughout her employment.

Accordingly, Sukari's FMLA retaliation claim also fails.

### III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.